*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAEL HAYDAW,

        Plaintiff-Appellant,

and

PRIORITY PHYSICAL THERAPY AND
REHABILITATION, LLC, AND MICHIGAN
PAIN MANAGEMENT, PLLC,

        Intervening Plaintiffs,

v

FARM BUREAU INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
July 9, 2020
9:10 a.m.

No. 345516
Wayne Circuit Court
LC No. 16-012992-NF

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

SHAPIRO, J.

After finding that plaintiff made false statements at his deposition, the trial court granted defendant summary disposition pursuant to the insurance policy's fraud provision. We hold that fraud provisions in no-fault insurance policies do not provide grounds for rescission based upon false statements made by the insured during first-party litigation. Accordingly, we reverse and remand for further proceedings.

I.

This case arises out of a motor vehicle accident in which plaintiff claims to have sustained injuries to his back, neck, and shoulders. Defendant is plaintiff's no-fault insurer. In October 2016, plaintiff filed the instant lawsuit alleging that defendant wrongfully withheld personal protection insurance (PIP) benefits that plaintiff was due under his insurance policy and the no-fault act, MCL 500.3101, *et seq*. In February 2017, plaintiff signed litigation authorizations to release all of his medical records, and he was deposed in April 2017. English is not plaintiff's first language, and he testified through an interpreter. Plaintiff also underwent two insurance medical

-1-

examinations in April and May 2017, respectively. Plaintiff communicated with the physicians via an interpreter.

After discovery was completed, defendant moved for summary disposition on the grounds that plaintiff made false statements during discovery regarding his medical history. Plaintiff's medical records showed intermittent complaints of back, neck, and shoulder pain and that at times he had been prescribed pain medication in the years preceding the accident. Given that history, defendant asserted that plaintiff testified falsely at his deposition when he said that he saw his primary care physician for "[f]lu, that's it," before the accident and that he was prescribed flu medication.[1] Defendant also maintained that plaintiff falsely represented in the medical examinations that he did not have problems with his back, neck, or shoulders before the accident. Defendant argued that it was entitled to summary disposition under the policy's fraud provision[2] and *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014).

---

[1] The pertinent exchange is as follows:

*Q*. Prior to this accident have you ever hurt yourself or injured yourself in any way?

*A*. You mean before the accident?

*Q*. Yes

*A*. No

*Q*. Before the accident did you have a doctor that you used to go to?

*A*. Yes.

*Q*. Who is that doctor?

*A*. Nabeel Toma.

*Q*. And what did you go to Nabeel Toma for before the accident?

*A*. Flu, that's it.

* * *

*Q*. Were you prescribed any medications before this accident happened?

*A*. Something, like, normal, like flu or something like that.

[2] The provision states:

The entire policy will be void if, whether before or after a loss, you, any family member, or any insured under this policy has:

-2-

In response, plaintiff argued that he testified truthfully at the deposition because his last two doctor visits before the accident were to address the flu and his understanding of the question was that it referred to the doctor visits immediately before the accident. Further, plaintiff disclosed his medical records before the deposition and therefore defendant was aware of his medical history. If plaintiff did make inaccurate statements at his deposition, he argued that this went to his credibility, which should be determined by the trier of fact. Plaintiff also questioned the accuracy of the medical-examination reports considering that he was communicating through an interpreter.

After hearing oral argument, the trial court found that plaintiff made false statements at his deposition and granted summary disposition on the basis of the policy's fraud provision.

II.

This case requires us to confront a question not previously addressed in a published opinion from this Court. That is, whether statements made during litigation after the insured's claim is denied constitute grounds to void the policy under a fraud provision. Consistent with the vast majority of courts that have addressed this issue, we hold that such provisions do not apply to statements made during the course of litigation.[3]

Our research indicates that this issue was first addressed in *Republic Fire Ins Co of North America v Weides*, 81 US 375, 382-383; 20 L Ed 894; 14 Wall 375 (1871), in which the United

---

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements;

relating to this insurance or to a loss to which this insurance applies.

While we do not decide the case on this basis, we see no basis for a finding that plaintiff "intentionally concealed or misrepresented" his medical history given that he voluntarily released all his records.

[3] We review de novo a grant of summary disposition. See *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). In this case, defendant moved for summary disposition under MCR 2.116(C)(10), which is properly granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." We also review de novo the construction of an insurance contract. *Gurski v Motorist Mut Ins Co*, 321 Mich App 657, 665; 910 NW2d 385 (2017). The parties submitted court-ordered supplemental briefs addressing "whether the fraud provision in the no-fault policy applies to false statements made in the course of litigation, i.e., after a complaint alleging a breach of contract has been filed." *Haydaw v Farm Bureau Ins Co*, unpublished order of the Court of Appeals, entered March 27, 2020 (Docket No. 345516).

States Supreme Court held that testimony at trial does not implicate an insurance policy's fraud or false swearing clause:

> Nor was there error in denying the defendants' third and fourth prayers. It is true the policies stipulated that fraud or false swearing on the part of the assured should work a forfeiture of all claim under them. The false swearing referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agreed to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statements made by the plaintiffs under oath in their proofs of loss, and their statements when testifying at the trial that the former were false, so as to justify the court in assuming it, and directing verdicts for the defendants. It may have been the testimony last given that was not true, or the statements made in the proofs of loss may have been honestly made, though subsequently discovered to be mistaken. *It is only fraudulent false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies, and it was for the jury to determine whether that swearing was false and fraudulent.* [Emphasis added.]

In what has become a leading authority on this issue, in *American Paint Service, Inc v Home Ins Co of New York*, 246 F2d 91 (CA 3, 1957), the Third Circuit Court of Appeals followed the Supreme Court in holding that trial testimony could not be relied upon by the insurer to show that fraud had occurred. The Third Circuit provided the following rationale for its holding:

> Trial testimony in a case where fraud and false swearing is in issue serves to establish the truth or falsity of the preliminary proofs and the materiality and wilfulness of any false proofs. The fraud and false swearing clause is one beneficial to the insurer and it reasonably extends to protect the insurer during the period of settlement or adjustment of the claim. *When settlement fails and suit is filed, the parties no longer deal on the non-adversary level required by the fraud and false swearing clause. If the insurer denies liability and compels the insured to bring suit, the rights of the parties are fixed as of that time for it is assumed that the insurer, in good faith, then has sound reasons based upon the terms of the policy for denying the claim of the insured. To permit the insurer to await the testimony at trial to create a further ground for escape from its contractual obligation is inconsistent with the function the trial normally serves. It is at the trial that the insurer must display, not manufacture, its case.* Certainly the courts do not condone perjury by an insured, and appropriate criminal action against such a perjurer is always available. [*Id*. at 94 (emphasis added).]

The vast majority of the courts that have addressed this issue have followed suit,[4] and it is now considered a general rule that statements made during litigation do not implicate a fraud or

---

[4] See *Rego v Connecticut Ins Placement Facility*, 219 Conn 339; 593 A2d 491, 497 (1991); *Dodson Aviation, Inc v Rollins, Burdick, Hunter of Kansas, Inc*, 15 Kan App 2d 314; 807 P2d

false swearing clause. See e.g., *Dodson Aviation, Inc v Rollins, Burdick, Hunter of Kansas, Inc*, 15 Kan App 2d 314; 807 P2d 1319, 1326 (1991) ("The overwhelming majority of jurisdictions hold that only false statements made before legal proceedings have begun can serve to void an insurance policy."); *Ocean-Clear, Inc v Continental Cas Co*, 94 App Div 2d 717, 718; 462 NYS2d 251 (1983) ("[I]t is generally accepted that fraud arising after the commencement of an action on a policy does not void the policy.") (citations omitted). That rule has been applied to preclude an insurer from asserting fraud or false swearing on the basis of the insured's deposition testimony. See *Mercantile Trust Co v New York Underwriters Ins Co*, 376 F2d 502, 504 n 2 (CA 7, 1967); *Third Nat'l Bank v Yorkshire Ins Co*, 218 Mo App 660; 267 SW 445, 449 (1924).

We find these authorities persuasive and adopt their reasoning.[5] False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false is a matter for a jury or a judge acting as factfinder. And if it can be shown that a party intentionally testified falsely, it is up to the court to determine what, if any, sanction is proper.

---

1319, 1326-1327 (1991); *Ocean-Clear, Inc v Continental Cas Co*, 94 App Div 2d 717, 718; 462 NYS2d 251 (1983); *Mercantile Trust Co v New York Underwriters Ins Co*, 376 F2d 502, 504 n 2 (CA 7, 1967); *Ichthys, Inc v Guarantee Ins Co*, 249 Cal App 2d 555, 557-559; 57 Cal Rptr 734 (1967); *Tarzian v West Bend Mut Fire Ins Co*, 74 Ill App 2d 314; 221 NE2d 293, 297-298 (1966); *Home Ins Co v Cohen*, 357 SW2d 674, 676-677 (Ky App, 1962); *Royal Ins Co v Story*, 34 Ala App 363; 40 So 2d 719, 722-723 (1949); *American Alliance Ins Co v Pyle*, 62 Ga App 156; 8 SEd2d 154, 159-160 (1940); *Third Nat'l Bank v Yorkshire Ins Co*, 218 Mo App 660; 267 SW 445, 449 (1924); *Deitz v Providence Washington Ins Co*, 33 W Va 526; 11 SE 50, 58 (1890). A handful of contra authorities are identified in 64 ALR2d 962. One of those cases was expressly overruled. See *World Fire & Marine Ins Co v Tapp*, 279 Ky 423; 130 SW2d 848 (1939), overruled in *Cohen*, 357 SW2d 674. Most of the cases concern fire insurance policies, but the type of policy had no bearing on the decision. The underlying reasoning, as first articulated in *Weides*, 81 US 375, and *American Paint Service*, 246 F2d 91, applies with equal force to fraud clauses in no-fault insurance policies.

[5] Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value. *Estate of Voutsara by Gaydos v Bender*, 326 Mich App 667, 676; 929 NW2d 809 (2019). Defendant refers us to unpublished opinions from this Court that affirmed dismissals based solely on misrepresentations made by the insured during the course of litigation. See *Parker v Farm Bureau Gen Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2019 (Docket No. 343289); *Sabados v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued February 12, 2019 (Docket No. 342088); *Thomas v Frankenmuth Mut Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued July 12, 2016 (Docket No. 326744). Unpublished opinions are also not binding authority but may be persuasive or instructive. MCR 7.215(C)(1); *Kern v Kern-Koskela*, 302 Mich App 212, 241; 905 NW2d 453 (2017). However, unlike the out-of-state caselaw we rely on, the unpublished opinions cited by defendant addressed only whether the plaintiff's statements were false and did not analyze whether the policies' fraud clauses may be read to apply to statements made during the course of litigation.

Indeed, defendant is essentially seeking dismissal of plaintiff's claim on the basis of alleged discovery misconduct. Given that questions of credibility and intent are generally left to the trier of fact, "[i]t is . . . doubtful whether dismissal for intentionally false deposition testimony is ever appropriate." *Swain v Morse*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346850); slip op at 6. In any event, it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony. To be clear, once an insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy.[6]

For similar reasons, statements made during litigation are by their nature incapable of satisfying the elements for voiding a policy on the basis of post-loss fraud. In order to obtain that relief under *Bahri*, 308 Mich App at 424-425,[7] the material misrepresentation must have been made with "the intention that the insurer would act upon it." Yet an insured's statements during discovery are made with the intention that the trier of fact, not the insurer, will act on them. To the extent that the insurer acts on those statements, it is through counsel for purposes of litigation strategy rather than processing the claim under the policy's terms.

We are also mindful that allowing insurers to void a policy for false statements made during litigation would create a perverse incentive. For example, an insurer with full knowledge of the insured's medical history could seek to bait or lead the insured into making an inaccurate statement at deposition and then seek summary disposition on those grounds. Such tactics are directly at odds with the purpose of discovery.[8] See *People v Burwick*, 450 Mich 281, 298; 537 NW2d 813

---

[6] This does not mean that insureds are free to stonewall the insurer prior to litigation or sue prematurely. The fact remains that the insured is not entitled to benefits unless he or she has provided reasonable proof under the no-fault act.

[7] The following elements must be met to void a policy on the basis of an intentional material misrepresentation:

> (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [*Bahri*, 308 Mich App at 424-425 (quotation marks and citation omitted).]

[8] We also question, but need not decide, whether plaintiff's deposition testimony and statements at the medical examinations are protected by the privilege of witness immunity, which the Supreme Court has summarized as follows:

> Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. *Falsity or malice on the part of the witness does not abrogate the privilege.* The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. [*Maiden v*

(1995) ("A primary purpose of discovery is to enhance the reliability of the fact-finding process *by eliminating distortions attributable to gamesmanship*.") (emphasis added). At the same time, our holding does not prevent defendant from presenting plaintiff's allegedly false statements to the jury for purposes of undermining plaintiff's credibility. Nor does it negate the other "disincentives for untruthful deposition testimony." See *Swain*, ___ Mich App at ___; slip op at 5.

Finally, we note that a contrary ruling—that a fraud or misrepresentation clause applies to statements made during the course of litigation—would implicate the first-breach rule. That is, if the insurer, by the denial of the claim, was first to breach the contract, it may not defend on the grounds that the plaintiff subsequently failed to adhere to the contract. "An insurance policy is a contractual agreement between the insured and the insurer." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform. . . . [T]his rule only applies when the initial breach is substantial." *Michaels v Amway Corp.*, 206 Mich App 644, 650-51; 522 NW2d 703 (1994) (citations omitted). Defendant has refused to provide PIP benefits despite the existence of the policy. If the denial is unjustified it is clearly a substantial breach that would relieve plaintiff of his contractual duties under the policy. Accordingly, summary disposition on the basis of false statements would not be warranted unless and until it is determined that the denial of the claim did not breach the contract.

For the reasons discussed, however, we are convinced that statements made during the course of litigation do not implicate an insurance policy's fraud or misrepresentation clause and that such a clause may not be relied on by the insurer to justify a denial of benefits.[9] Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh

---

*Rozwood*, 461 Mich 109, 134; 597 NW2d 817 (1999) (citations omitted; emphasis added).]

Statements made at depositions and medical examinations occur during the course of judicial proceedings because those are discovery mechanisms governed by court rules. See MCR 2.303-2.308; MCR 2.311. See also *Kowalski v Boliker*, 893 F3d 987, 1000 (CA 7, 2018) ("The scope of [witness] immunity is broadly construed to include preparation of testimony, testimony at pretrial proceedings, depositions, and affidavits.") (citations omitted). If plaintiff's statements are privileged, we are skeptical that defendant may rely on them to void the policy.

[9] Given our ruling that plaintiff's statements made in the course of litigation are not grounds to void the policy even if intentionally false, it is not necessary for us to decide whether the trial court erred in finding intentional misrepresentation.